# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT WALLIS, Individually and as | ) | |
| Sole Beneficiary of USA Baby Inc.'s Assets | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Joan B. Gottschall |
| v. | ) | |
| | ) | Case No. 12 C 5285 |
| ALAN LEVINE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiff Scott Wallis has brought a forty-count Amended Complaint on behalf of himself individually and as beneficiary of USA Baby, Inc. ("USA Baby"). Wallis asserts claims against approximately 190 defendants, not all of whom have been served. He seeks $500 million in damages for alleged breaches of an automatic bankruptcy stay, "interference in interstate commerce, trafficking in good or services bearing counterfeit marks, copyright infringement, the deprivation of civil rights, conspiracy to violate said civil rights," negligence in preventing civil rights violations, racketeering, and conspiracy to commit racketeering. (Am. Compl. ¶ 4, ECF No. 7.) For the reasons that follow, the court dismisses the Amended Complaint in its entirety.

# I. FACTS[1]

## A. The USA Baby Bankruptcy Proceedings

USA Baby sold children's products through franchise stores. At one time, it had between fifty and seventy franchise locations. USA Baby owned various registered trademarks, and pursuant to franchise agreements, the franchisees paid royalties to use the trademarks. Wallis served as an executive of USA Baby from January 1, 2005, until April 11, 2009, and he held an equity stake in the company. By 2008, some franchises had gone out of business, and most of the remaining franchisees had stopped paying franchise royalties, depriving USA Baby of its primary source of income.

On September 5, 2008, three USA Baby franchisees and creditors filed an involuntary bankruptcy petition against USA Baby under Chapter 11 of the Bankruptcy Code. Involuntary Petition, *In re USA Baby, Inc.*, No. 08-23564 (Bankr. N.D. Ill. Sept. 5, 2008). An automatic bankruptcy stay went into effect, pursuant to 11 U.S.C. § 362. On February 11, 2009, the Bankruptcy Court appointed Barry Chatz as trustee of USA Baby's assets. Trustee Letter of Appointment, *In re USA Baby, Inc.*, No. 08-23564 (Bankr. N.D. Ill. Feb. 11, 2009). The trustee determined that a successful reorganization was impossible, and the bankruptcy was converted to a Chapter 7 proceeding.

In May 2009, Commerce Capital, LP ("Commerce Capital") was granted relief from the automatic bankruptcy stay to foreclose on a lien against USA Baby's assets. On July 6, 2009, Commerce Capital conducted a foreclosure sale of the assets, which included USA Baby's trademarks and franchise agreements, and through credit bidding, purchased the assets itself for

---

[1] The facts are drawn from both the Amended Complaint and the orders of numerous state and federal courts, which are matters of public record of which the court takes judicial notice. *See Gen'l Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

$1 million. *Id.* On November 18, 2009, Commerce Capital brought a claim against a franchisee group, the United Storeowners Association of Baby Stores, LLC, for the unauthorized use of intellectual property formerly belonging to USA Baby and currently belonging to Commerce Capital. Commerce Capital subsequently settled a number of claims against the franchisees regarding the trademarks and franchise agreements. *Id.*; *see also Commerce Capital, LP v. United Storeowners Assoc. of Baby Stores, LLC*, Stipulation of Dismissal, No. 09 C 7229 (N.D. Ill. Apr. 2, 2010).

In multiple motions and filings in the bankruptcy court, the Northern District of Illinois, and the Seventh Circuit, Wallis contested the appointment of Chatz as trustee and challenged decisions made by Chatz on behalf of USA Baby. *See, e.g.*, *In re USA Baby, Inc.*, 674 F.3d 882 (7th Cir. 2012); *In re USA Baby, Inc.*, 424 F. App'x 558, 561 (7th Cir. 2011); *Wallis v. Levine*, 2012 WL 1531989 (N.D. Ill. Apr. 27, 2012). Among his claims were that the trustee and franchisees had committed fraud and that USA Baby should have been allowed to collect royalties from the franchisees in order to facilitate its reorganization. *In re USA Baby, Inc.*, 674 F.3d at 883. In 2009, Wallis moved to stand in for Chatz to pursue claims against the franchisees on behalf of the USA Baby estate. That motion was denied. On appeal, the Seventh Circuit held that Chatz exercised reasonable diligence in preserving and protecting the estate property, and that he properly exercised his discretion in declining to pursue claims against the franchisees on behalf of the estate and in opposing Wallis's motion to pursue the claims. *In re USA Baby, Inc.*, 424 F. App'x at 561.

Along with USA Baby CEO Ron Eriksen, Wallis filed an adversary complaint in the bankruptcy proceeding on June 1, 2010, asserting thirty-five counts relating to alleged breaches of the automatic bankruptcy stay, violations of the Racketeering Influenced and Corrupt

Organizations Act ("RICO"), and civil rights violations. The bankruptcy court dismissed the complaint, holding that any claims relating to violations of the automatic stay or RICO belonged to the debtor's estate, and could only be brought by the trustee. *Wallis v. Levine*, 2012 WL 1531989, at *1. Wallis's personal claims, meanwhile, fell outside the jurisdiction of the bankruptcy court. *Id.* at *4.

Wallis alleges that on February 9, 2011, USA Baby's residual assets were abandoned to him by order of the bankruptcy court, and that he now owns those assets, "including claims in law, tort, or equity." He has filed a number of actions asserting claims on behalf of USA Baby, including the present action and *Wallis v. Levine*, No. 12 C 6466 (N.D. Ill.) (Chang, J.) (filed Aug. 15, 2012), which seeks $1.5 billion in damages for many of the same claims asserted this action, along with additional claims of violations of admiralty law.

**B. Legal Actions against USA Baby and its Officers**

Before and during the bankruptcy proceedings, many of the defendants in this case were involved in actions brought against USA Baby, Wallis, and/or Eriksen. In 2006, the Ohio Attorney General, represented by Assistant Attorney General Michael R. Sliwinski, brought an action against USA Baby's officers and USA Baby franchise group Midwest Baby Group, LLC ("Midwest Baby") for violations of Ohio consumer protection laws. The defendants entered into a consent decree on November 13, 2008.

Wallis alleges that Alan Levine and Barry Cohodes, represented by Lawrence Kamin, Saunders, and Uhlenhop, LLC ("LKSU"), sued USA Baby, Eriksen, and Wallis in the Circuit Court of Cook County in 2007 for violating a shareholder's agreement. The plaintiffs obtained a final judgment from Judge Richard Billick on April 3, 2009. (Am. Compl. ¶ 95.)

On December 8, 2008, former USA Baby employee Thomas Gierlak, represented by Seyfarth and Shaw LLP ("Seyfarth") and attorney Scott Schaefers, filed a wage claim with the Illinois Department of Labor ("IDOL"). The IDOL pursued the claim against Erikson and USA Baby before administrative law judge Claudia Manley. On January 21, 2009, Gierlak filed a complaint against Wallis and Erikson for unpaid 401(k) contributions in the Circuit Court of DuPage County. Judges John Elsner, Bruce Kelsey, and Hollis Webster allowed the case to proceed. Wallis alleges that the judges' orders allowed Gierlak and Seyfarth to obtain possession of protected documents and trade secrets belonging to USA Baby.

On December 13, 2007, USA Baby entered into a loan agreement with Fifth Third Bank ("Fifth Third"). The note was paid off through another agreement with American Chartered Bank, into which USA Baby entered on August 28 or 29, 2008. Fifth Third then entered into another loan agreement with USA Baby for $150,000. On February 20, 2009, Fifth Third, represented by Mulherin Rehfeldt & Varchetto, P.C. ("MRV"), filed a complaint against Eriksen in the Circuit Court of DuPage County to collect on that loan, without seeking relief from the bankruptcy stay. Judge Hollis Webster presided over the case.

On July 27, 2009, American Chartered Bank filed a complaint seeking $520,881.10 against Eriksen in the Circuit Court of Kane County. *See American Chartered Bank v. Eriksen*, No. 09 L 489 (Cir. Ct. Kane Cnty. July 27, 2009). Fuchs & Roselli, Ltd. represented American Chartered Bank. Judges James Murphy and Alan Cargerman entered orders in the case. Deborah Seyller is the Kane County Clerk of Courts. Wallis alleges that the action was filed in violation of the automatic bankruptcy stay.

On February 17, 2009, Petti Murphy & Associates ("Petti Murphy"), who had represented USA Baby in 2007 and 2008, filed a complaint against Wallis and Eriksen in the

Circuit Court of Kane County in an effort to collect on a debt involving a bad check. *See Petti Murphy & Assoc. v. Eriksen*, 2009 AR 224 (Cir. Ct. of Kane Cnty.). Wallis alleges that in filing the complaint, Petti Murphy violated the automatic bankruptcy stay.

On May 6, 2011, the United States Department of Labor ("DOL") filed a complaint against USA Baby and its officers to collect 401(k) and group health insurance payments. *See Solis v. Wallis*, No. 11 C 3019, 2012 WL 3779065, at *2 (N.D. Ill. Aug. 30, 2012). The DOL alleged that instead of remitting participant contributions to a 401(k) plan and transferring health insurance premiums to insurance providers, USA Baby and its officers retained them to pay for the company's general operating expenses, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq. Id.* The district court denied the defendants' motion to dismiss the action or to stay it pursuant to the automatic stay provisions of the Bankruptcy Code, citing the government regulatory exception to the automatic stay provisions of the Code. *Id.* at *16; *see* 11 U.S.C. § 362(b)(4). In the Amended Complaint, Wallis brings claims against four federal officials involved in the DOL action: DOL Secretary Hilda Solis, DOL Solicitor M. Patricia Smith, retired Chicago Regional Solicitor Joan E. Gestrin, and Steven L. Haugen, the Chicago Regional Director of the Employee Benefits Security Administration.

## C. Alleged Trademark Violations

Wallis alleges that USA Baby's franchisees used its trademarks without authorization, and that the law firms LKSU; Wick Phillips, LLP; Gray Robinson, P.A.; DiMonte & Lizak, LLC; Chuhak and Tecson, LLC; Arnstein & Lehr LLP; Trobe, Babowice & Associates, LLC; and Husch Blackwell LLP provided legal advice to the franchisees. Wallis alleges that the franchisees filed false statements before the U.S. Patent and Trademark Office ("PTO"), and that

as a result, USA Baby's trademarks were designated as dead by the PTO. The franchisees established a new domain name and website on December 29, 2008. Wallis alleges that the franchisees withheld this information from the bankruptcy court. Wallis further alleges that Cardservice International, Inc. processed credit card transactions for the franchisees.

## D. Alleged Enterprise to "Loot" USA Baby

Wallis alleges broadly that all of the defendants were involved in a racketeering enterprise that targeted USA Baby. The enterprise allegedly consisted of the franchisees, Gierlak, and Cardservice International, who "looted" USA Baby; various law firms "involved in aiding and abetting" the looting; and numerous government defendants "that did not act to prevent" the looting. (Am. Compl. ¶ 213.) Wallis alleges that Levine and Cohodes "were involved in, coordinated and masterminded . . . predicate acts of racketeering." (*Id.* at ¶ 214.) He alleges that the franchise group named United Storeowners Association of Baby Stores, LLC, which is led by Levine, is using USA Baby's assets, trademarks, and systems to sell to USA Baby's customers. Wallis alleges that the defendants committed predicate acts forming the basis for enterprise liability based on a common scheme to loot USA Baby, including interference with interstate commerce, in violation of 18 U.S.C. § 1951, trafficking in counterfeit goods and services, in violation of 18 U.S.C. § 2320, making false statements to the PTO, in violation of 15 U.S.C. § 1120, and copyright infringement, in violation of 17 U.S.C. §§ 501 & 506, and 18 U.S.C. § 2319. Wallis alleges that the government officials neglected to prevent the acts of looting, in violation of 42 U.S.C. § 1986.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a case if the plaintiff "fail[s] to state a claim upon which relief can be granted." The court accepts as

true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). Although a court generally does not consider matters outside the pleadings on a Rule 12(b)(6) motion, the court may "take judicial notice of matters of public record," such as orders from other courts. *Gen'l Elec. Capital Corp.*, 128 F.3d at 1080.

Although Federal Rule of Civil Procedure 8(a) requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 566 U.S. 662 (2009) (noting that while Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Id.* In other words, to survive a motion to dismiss post-*Twombly*, "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is 'could these things have happened, not did they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)).

In addition, any fraud-based allegations, such as allegations of fraud in a civil RICO complaint, must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) ("Rule 9(b) is of course applicable to allegations of fraud in a civil RICO complaint."). This means the plaintiff must, at a minimum,

provide the time, place, and content of the alleged false representations, the method by which the representations were communicated, and the identities of the parties to those representations. *Slaney*, 244 F.3d at 597.

### III. ANALYSIS

As threshold matters, the defendants raise two general arguments in support of dismissal: that claims for violation of an automatic bankruptcy stay, pursuant to 11 U.S.C. § 362(k), must be brought in the bankruptcy court, and that Wallis lacks standing to bring claims on behalf of USA Baby. As to this court's subject-matter jurisdiction, some courts have held that a claim for a violation of an automatic stay is properly filed in the bankruptcy court with jurisdiction over the bankruptcy action, and that a district court possesses only appellate jurisdiction over such claims. *See, e.g.*, *Trong v. Litman*, 312 F. App'x 377, 378 (2d Cir. 2009) (holding that the district court lacked jurisdiction over a claim of violation of the automatic stay); *E. Equip. and Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 121 (2d Cir. 2001) (same). The Seventh Circuit, however, has held "that 11 U.S.C. § [362(k)] creates a cause of action that can be enforced [in a district court] after bankruptcy proceedings have terminated." *Price v. Rochford*, 947 F.2d 829, 830-31 (7th Cir. 1991); *see also Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 n.2 (11th Cir. 2005) (holding that district court had original jurisdiction over claim alleging violation of automatic stay). In this case, the bankruptcy case was terminated and the trustee discharged on October 3, 2012. *In re USA Baby Inc.*, ECF No. 318, No. 08-23564 (N.D. Ill. Oct. 3, 2012.). Moreover, district courts have original jurisdiction over Title 11 proceedings under 28 U.S.C. § 1334, and Wallis's claims regarding alleged breaches of the automatic stay are

thoroughly intertwined with his RICO and civil rights claims.[2] The court concludes that jurisdiction over Wallis's claims is proper in this court and will address the merits of the claims.

As to Wallis's standing, the complaint fails to distinguish between claims brought on behalf of USA Baby and those brought by Wallis as an individual. The court acknowledges that there is some uncertainty as to whether the bankruptcy court could order USA Baby's assets to be abandoned to Wallis. *See In re USA Baby, Inc.*, 424 F. App'x at 562 ("It is an open question whether a bankruptcy court may direct that assets be abandoned to a person other than the debtor . . . but we need not decide that issue for the purposes of this appeal.") (internal citation omitted). In other words, although Wallis moved in the bankruptcy proceeding for the abandonment order, it is not clear whether the abandonment vested in him any interest in USA Baby's assets, which would normally re-vest in the debtor itself. The court need not grapple with these questions for purposes of the motions to dismiss, however, as each count of the Amended Complaint fails for the additional reasons stated below. Given the large number of counts and defendants in the Amended Complaint, the court will not address every possible basis for dismissal of each count.

**Counts I** and **II** allege that Alan Levine and Barry Cohodes "derailed" USA Baby's Chapter 11 bankruptcy by bringing a shareholder action in the Circuit Court of Cook County, and that LKSU breached the bankruptcy stay by representing Levine and Cohodes and USA Baby franchisees in actions against USA Baby. These counts fail, as Levine and Cohodes obtained an order requiring Erikson to repurchase USA Baby stock from them, pursuant to a shareholder agreement. The automatic stay did not extend to Eriksen in his individual capacity,

---

[2]     Section 362(d) of the Bankruptcy Code suggests that, although Wallis's claims would have been properly filed in the bankruptcy court, it would have been appropriate for the district court to withdraw the referral to consider the claims: "The district court may withdraw, in whole or in part, any case or proceeding referred [to a bankruptcy court], on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 11 U.S.C. § 362(d).

and therefore the action did not violate the stay. An automatic bankruptcy stay under Title 11 applies only to debtors. *See In re Kmart Corp.*, 285 B.R. 679, 688 (Bankr. N.D. Ill. 2002); *see also Nat'l Tax Credit Ptrs., LP v. Haulik*, 20 F.3d 705, 707 (7th Cir. 1994) (stating that under § 362(a) of the Bankruptcy Code, the automatic stay is applicable to actions against the debtor, but "[b]ankruptcy does not affect third-party guarantees of a debtor's obligations"). Moreover, whether Eriksen was required to repurchase stock from Levine and Cohodes had no "intimate connection" to the bankruptcy proceedings that would render the automatic stay applicable. *See Nat'l Tax Credit Ptrs.*, 20 F.3d at 708.

**Count III** alleges that Cook County Circuit Judge Richard Billick violated the bankruptcy stay by issuing orders in the action brought by Levine and Cohodes, and is individually liable for *ultra vires* acts. This claim is barred by the doctrine of absolute judicial immunity. Judges cannot be sued for acts performed in their judicial capacity. *See Stump v. Sparkman*, 435 U.S. 349 (1978). As the Seventh Circuit has explained, "[t]he doctrine of judicial immunity has been embraced for centuries" and "confers complete immunity from suit, not just a mere defense to liability." *Dawson v. Newman*, 419 F.3d 656, 660-61 (7th Cir. 2005) (internal quotation marks and citations omitted). "If a judge errs through inadvertence or otherwise, a party's remedy is through appellate process." *Id.* at 661 (internal quotation marks omitted). Although Wallis alleges that Judge Billick acted outside the scope of his authority, the allegations in the Amended Complaint pertain to acts performed in his judicial capacity. Moreover, courts have applied absolute judicial immunity to dismiss claims against judges who allegedly entered orders in violation of an automatic stay. *See, e.g.*, *In re Betts*, 165 B.R. 233, 241 (Bankr. N.D. Ill. 1994).

**Count IV** alleges that Cook County Clerk of the Circuit Court Dorothy Brown and Cook County failed to properly administer cases so as to prevent Levine, Cohodes, and LKSU from violating the bankruptcy stay. Claims against Brown in her official capacity are barred by the Eleventh Amendment, as the Cook County Clerk is a state official. *See Drury v. McLean Cnty.*, 433 N.E.2d 666, 667-68 (Ill. 1981). Furthermore, the Amended Complaint fails to state a claim that Brown violated Wallis's constitutional rights. As to Cook County, even had Wallis managed to state a claim against Brown, the county is not liable for the conduct of the County Clerk, as she is not a county employee. Nor does Wallis allege any official policy or custom at the county level that would create liability for violations of Wallis's rights. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

**Counts V** and **VI** allege that Thomas Gierlak, former Vice President of Operations for USA Baby, brought claims in violation of the bankruptcy stay, and that Seyfarth represented Gierlak, in violation of the bankruptcy stay. Gierlak filed a complaint against Wallis and Erikson for unpaid 401(k) contributions in the Circuit Court of DuPage County. DuPage County records show that Gierlak obtained a default judgment before Judge Bruce Kelsey against Wallis and Eriksen in the amount of $27,985.79. *See* https://www.dupagecase.com/Clerk/allsearch.do. This count fails because Gierlak sued Wallis and Eriksen in their individual capacities, and therefore did not violate the bankruptcy stay, which protected USA Baby.[3] As discussed above, bankruptcy does not impose an automatic stay on guarantors.

---

[3] Wallis makes further allegations against Gierlak in his Response: that Gierlak violated a confidentiality agreement by revealing information to the franchisees and their law firms, and in doing so, committed wire and mail fraud, and that Gierlak colluded with the franchisees to cause Wallis and Eriksen to be held personally liable for USA Baby's debts. As stated above, claims of fraud must be pleaded with particularity, pursuant to Rule 9(b). These allegations shed no light on what agreement Gierlak allegedly violated or what information he revealed, and they are insufficient to state a claim that Gierlak committed either fraud or racketeering.

**Count VII** alleges that Judges John Elsner and Bruce Kelsey acted outside their lawful authority and are liable in their individual capacities for violating the bankruptcy stay by issuing orders without jurisdiction. Wallis claims his civil rights, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, were violated as a result of the judges' actions. This claim is barred by the doctrine of absolute judicial immunity, as discussed above with respect to Count III.

**Counts VIII** and **IX** allege that Fifth Third violated the bankruptcy stay by seeking relief in the Circuit Court of DuPage County for matters within the jurisdiction of the bankruptcy court, and that MRV violated the bankruptcy stay by representing Fifth Third. Fifth Third filed a complaint in state court against Eriksen in his individual capacity, seeking to collect a sum in excess of $150,043.75 from Eriksen pursuant to the terms of a guarantee agreement executed by Eriksen on or about December 13, 2007. (MRV's Mot. to Dismiss Ex. 2 (Compl. to Collect Revolving Note), ECF No. 192-2.) The automatic stay did not extend to Eriksen individually, and nothing indicates that Eriksen requested that the bankruptcy stay be extended to him. Eriksen moved to enforce the automatic stay before Circuit Court Judge Hollis Webster, but that motion was denied on April 8, 2010. As discussed above, bankruptcy does not impose an automatic stay on guarantors, and it therefore did not protect Eriksen from suit. Counts VIII and IX therefore fail to state a claim against Fifth Third and MRV.

**Count X** alleges that Judge Hollis Webster is liable in her individual capacity for issuing orders in violation of the bankruptcy stay. Wallis claims that as a result of Judge Webster's acts, his civil rights were violated, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. This claim is barred by absolute judicial immunity, as discussed above with respect to Count III.

**Count XI** alleges that DuPage County and the DuPage County Clerk of the Circuit Court, Chris Kachiroubas, owed USA Baby and Wallis a duty of care to properly administer

cases, and failed to prevent Gierlak, Seyfarth, Fifth Third, and MRV from violating the bankruptcy stay by filing claims in the Circuit Court of DuPage County. Wallis has not alleged that Kachiroubas had any duty as Clerk of Court to prevent documents from being filed when the defendant was involved in a bankruptcy proceeding, nor is the court aware of any basis on which the Clerk of Court could exercise such discretion. Nothing in the complaint suggests that Kachiroubas did anything apart from fulfilling his statutory duties. As the complaint fails to state a claim against Kachiroubas, the court need not consider his additional arguments that he enjoys sovereign immunity as a state official, and that he further enjoys quasi-judicial immunity when performing a function integral to the judicial process. As to DuPage County, there is no basis for liability based on the County Clerk's conduct. Although elected at the county level, the Clerk of the Circuit Court is an office of the judicial branch of Illinois state government, not a county official. *Drury*, 433 N.E.2d at 667-68.

**Count XII** alleges that Petti Murphy violated the bankruptcy stay by seeking relief in the Circuit Court of Kane County. The case at issue sought relief from Wallis and Eriksen in their individual capacities. *See Petti Murphy & Assocs.*, 2009 AR 224. The state court awarded the plaintiff $19,815, and that judgment was affirmed by the Illinois Appellate Court. *See Petti Murphy & Assocs. v. Eriksen*, No. 1-10-1270, 2012 Ill. App. 2d (Aug. 29, 2012). As the automatic stay was not extended to Wallis and Eriksen, Count XII fails to state a claim against Petti Murphy.

**Counts XIII and XIV** allege that Judges James Murphy and Alan Cargerman of the Circuit Court of Kane County issued orders in violation of the bankruptcy stay and are liable in their individual capacities for doing so. Wallis claims his civil rights were violated, pursuant to

42 U.S.C. §§ 1983, 1985, and 1986. This claim is barred by the doctrine of absolute judicial immunity, as discussed above.

**Counts XV** and **XVI** allege that American Chartered Bank violated the bankruptcy stay by seeking relief in the Circuit Court of Kane County, and that Fuchs & Roselli violated the bankruptcy stay by representing American Chartered Bank. Public records show that American Chartered Bank sued Eriksen in his individual capacity for $520,881.10, including the loan principal of a note backed by a personal guarantee, and fees. *See Am. Chartered Bank v. Eriksen*, No. 09 L 489 (Cir. Ct. Kane Cnty. July 27, 2009). As previously discussed, the automatic stay was not extended to Eriksen, and these counts are therefore dismissed.

**Count XVII** alleges that Kane County and the Kane County Clerk of Court, Deborah Seyller, owed USA Baby and Wallis a duty of care to properly administer cases, and failed to prevent Petti Murphy, American Chartered Bank, and Fuchs and Roselli from violating the bankruptcy stay by filing claims in the Circuit Court of Kane County. This claim fails for the same reasons discussed above with respect to the claims against DuPage County, Cook County, and their respective County Clerks.

**Count XVIII** alleges that the State of Illinois is liable for allowing state actors to violate the bankruptcy stay, and for failing to have policies and procedures in place to manage bankruptcies. Wallis does not identify any specific actions by the State of Illinois. He alleges that Illinois had a duty to prevent violations of the bankruptcy stay, and that Illinois had a "policy" or "pattern of violating bankruptcy law" and encouraging violations of bankruptcy stays. These conclusory allegations are insufficient to state a claim. Furthermore, the Eleventh Amendment immunizes the states, as well as their agencies and officers, from suit in federal court. *Pennhurst Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-102 (1984); *MCI Telecomm.*

*Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000) ("The immunity conferred on a state by the Eleventh Amendment extends to state agencies as well.").

**Count XIX** alleges that Assistant Ohio Attorney General Sliwinski violated the bankruptcy stay by threatening USA Baby and its officers with litigation to elicit a settlement regarding Midwest Baby's alleged violations of Ohio consumer protection laws. According to the complaint, Sliwinski threatened to file a complaint against USA Baby unless its officers and Midwest Baby signed a consent decree. Assuming that the alleged facts are true, these allegations fail to state a claim against Sliwinski. The Bankruptcy Code contains an exception from the automatic stay for actions brought by government entities to enforce their regulatory power. The Code provides that the stay does not apply to

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power . . . .

11 U.S.C. § 362(b)(4). Thus, even had Sliwinski filed an action against USA Baby itself, he would not have violated the automatic stay. The action would have been an attempt to bring the defendants into compliance with Ohio's consumer protection laws, which is within the Ohio Attorney General's regulatory ambit. *See, e.g.*, *In re Nortel Networks, Inc.*, 669 F.3d 128, 140 (3d Cir. 2011) ("If the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies.").

**Count XX** alleges that the State of Ohio failed to manage its personnel and allowed state actors to violate the bankruptcy stay, and failed to have policies and procedures in place to manage bankruptcies. Wallis argues that the State of Ohio is liable for Sliwinski's violations of the bankruptcy stay. For the reasons discussed above with respect to Sliwinski, these allegations

are insufficient to state a claim. Furthermore, the Eleventh Amendment bars suits against states or state agencies.

**Count XXI** alleges that the USA Baby Franchisees continued to use USA Baby's system and trademarks without paying royalties, and stole trademarks and protected documents, in violation of the bankruptcy stay. Wallis further alleges that the law firms representing the franchisees failed to disclose their unlawful activity, and that the franchisees and firms conspired to violate the bankruptcy stay. These allegations do not specify how the actions of the franchisees violated the bankruptcy stay. Wallis also fails to allege any basis on which he can bring a claim for violations of USA Baby's intellectual property rights. Under the Copyright Act, only the "legal or beneficial owner of an exclusive right under a copyright" may bring an action for infringement. 17 U.S.C. § 501(b). Commerce Capital acquired USA Baby's assets through a foreclosure auction on July 6, 2009. Given that Commerce Capital purchased USA Baby's assets and subsequently settled its claims against the franchisees for unpaid royalties and trademark violations, little if anything remains of USA Baby's claims regarding violations of its intellectual property rights. *In re USA Baby, Inc.*, 424 F. App'x at 561.

**Counts XXII**, **XXIII**, **XXIV**, and **XXV** allege that Wick Phillips, Gray Robinson, Trobe Babowicz & Associates, and Arnstein & Lehr violated the bankruptcy stay by representing USA Baby franchisees, by failing to disclose violations by the franchisees to the bankruptcy court, and by conspiring to exercise control over USA Baby's assets. It is unclear from the complaint what specific actions Wick Phillips, Gray Robinson, Trobe Babowicz & Associates, and Arnstein & Lehr took that could form the basis for Wallis's claims. Publicly available documents indicate that Arnstein and Lehr filed a declaratory judgment action against USA Baby in the Circuit Court of Cook County in 2005. The case was resolved pursuant to a settlement. Arnstein &

Lehr also represented TBR, LLC, in an action brought by USA Baby in 2005. That case was dismissed in June 2005. *See USA Baby, Inc. v. TBR, LLC*, No. 05 C 0662 (N.D. Ill.). None of the allegations in the Amended Complaint support an inference that the firms named violated the automatic stay by pursuing an action against USA Baby outside of the bankruptcy proceeding after the bankruptcy action commenced. Counts XXII, XXIII, XXIV, and XXV are therefore dismissed.

**Count XXVI** alleges that Husch Blackwell LLP violated the bankruptcy stay by representing franchisees, Levine and Cohodes, and the United Storeowners Association of Baby Stores, LLC; by failing to disclose violations by the franchisees; and by conspiring to exercise control over USA Baby's assets. The Amended Complaint does not specify how the firm violated the bankruptcy stay or what violations the firm failed to disclose. Nor does it explain the basis of any duty Husch Blackwell LLP might have had to disclose such conduct. The conspiracy allegations are completely conclusory. Count XXVI is therefore dismissed.

**Count XXVII** alleges that Dimonte and Lizak violated the bankruptcy stay by representing franchisees, creditors, Levine and Cohodes, and LKSU; by failing to disclose violations by the franchisees; and by conspiring to exercise control over USA Baby's assets. The Amended Complaint does not identify the parties that allegedly violated the automatic stay or the conduct in which they were engaged, it does not explain the basis of any duty Dimonte and Lizak might have had to disclose such conduct, and it does not explain what the alleged conspiracy entailed. Count XXVII is therefore dismissed for failure to state a claim.

**Count XXVIII** alleges that Chuhak & Tecson, P.C. and attorney Jaralyn Baran violated the bankruptcy stay. The only specific action that the defendants are alleged to have committed is to have represented Mitchell and Lucille Goldberg in a suit against USA Baby. (Am. Compl.

¶ 77.) According to the Amended Complaint, the Goldbergs' case was settled in early 2008, before the bankruptcy proceeding began. (*Id.* ¶ 82.) According to Wallis, the Goldbergs and Chuhak and Tecson deceived USA Baby and its officers into entering into a settlement agreement, promising to disclose documents, and failing to disclose that Baran was the cousin of an attorney at LKSU. Wallis further alleges that the defendants conspired to exercise control over USA Baby's assets. Nothing in the complaint suggests that Chuhak & Tecson violated the bankruptcy stay. The allegations of fraud and conspiracy are too conclusory to state a claim, as the fraudulent statements are not pleaded with particularity, and there are no facts in the complaint that would support an inference that the defendants were part of a conspiracy to control USA Baby's assets.

**Count XXIX** alleges that "said defendants" made false statements to the U.S. PTO in order to aid the enterprise to loot USA Baby. The count does not specify which defendants made false statements, or what the false statements were. Although the complaint cites 15 U.S.C. § 1120, it does not explain how the allegations could establish a violation of that section, which creates liability for persons who "procure a registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation." The complaint does not state what registration was obtained as a result of the fraudulent statements. *See Country Mut. Ins. Co. Am. Farm Bureau Fed'n*, 876 F.2d 599, 601 (7th Cir. 1989) (explaining that "procure" means "obtain"). As these conclusory allegations fail to state a claim, Count XXIX is dismissed.

**Counts XXX** and **XL** allege RICO violations—that the defendants were involved in a corrupt enterprise to drive USA Baby into bankruptcy and to harm its officers, in violation of 18 U.S.C. § 1961(4), and that the defendants conspired to promote a profit from a racketeering

enterprise, in violation of §§ 1962(d) and 1964(a) and (c).[4]  Levine and Cohodes allegedly formed and "masterminded" the scheme, while the franchise operators promoted it through wire and mail communications.  The firms representing the franchisees profited through legal fees.

In Count XXX, Wallis alleges that certain defendants committed specific acts in furtherance of the alleged conspiracy, and broadly asserts RICO claims against all the defendants.  The court turns first to the specific allegations.  Wallis claims that Hinshaw & Culbertson, LLP mistakenly filed an appearance in a case filed by Wallis on November 17, 2008, and committed "mail fraud" by mailing filings in the case.  These allegations do not support an inference that Hinshaw & Culbertson committed fraud or racketeering.

Wallis next claims that Commerce Capital committed fraud by not following the rules that governed the foreclosure and sale of USA Baby's assets.  Based on the Amended Complaint and publicly available court records, the court finds that Wallis fails to state a claim that Commerce Capital committed fraud.  The Seventh Circuit's May 25, 2011, decision on Wallis's appeal from the bankruptcy court's order explained that "USA Baby owed . . . almost $1.2 million to Commerce Capital, LP. That debt was secured by virtually all of the company's assets, including its trademarks, franchise agreements, and royalty payments."  *In re USA Baby, Inc.*, 424 F. App'x at 560.  On May 13, 2009, Commerce Capital was granted relief from the bankruptcy stay, over Wallis's objections.  As explained in the Seventh Circuit's decision, Commerce Capital used credit bidding to "purchase[] substantially all of USA Baby's assets for $1 million and eventually sold the company's trademarks and franchise agreements to an association of 28 former USA Baby franchisees that were still operating."  *Id.* at 561.

Wallis has failed to allege facts that show that Commerce Capital acted wrongfully in seeking relief from the automatic stay.  The Seventh Circuit held in Wallis's appeal from the

---

[4]        Sections 1964(a) and (c) specify remedies for RICO violations that are predicated on the RICO claims.

bankruptcy court order that Wallis had not presented "any evidence even remotely supporting his allegations of a conspiracy or conflicts of interest" with regard to the trustee's failure to pursue claims against the franchisees and failure to oppose Commerce Capital's request for relief from the stay in order to conduct a foreclosure sale. *Id.* at 560. In addition, Wallis has alleged nothing that indicates that the foreclosure sale was not commercially reasonable. After paying $1 million in credit for the assets, which consisted of the franchise agreements and trademarks, Commerce Capital had to pursue litigation against the franchisees in order to recover any of the debt it had been owed by USA Baby. Moreover, even had the sale not been commercially reasonable, that would not establish a predicate act for a RICO claim. Finally, Wallis claims that Commerce Capital failed to send proper notice of the foreclosure sale to Ron Eriksen, and that the sale was fraudulent. The Illinois Appellate Court held that Eriksen had actual notice of the sale and failed to show prejudice from any technical deficiency of the notice. *Commerce Capital, L.P. v. Eriksen*, No. 2-10-1334, 2012 Ill. App. 2d, at *7 (Ill. App. Ct. June 29, 2012). That holding precludes any argument Wallis might make regarding notice. Additionally, the fact that Wallis objected to the sale demonstrates that he too had notice. *See id.*

Wallis alleges that Travelers Indemnity Company committed fraud against USA Baby by failing to pay an insurance claim to Midwest Baby, having misrepresented to USA Baby that it would pay the claim. Wallis has brought previous claims against Travelers in relation to the same insurance claim, including claims for fraud, breach of contract, and RICO violations. *See* Case Nos. 10 C 7250, 12 C 3529 (N.D. Ill.). Judge Darrah dismissed Wallis's claims on May 22, 2012, as barred by the suit-limitation period in the insurance policy, as preempted by the Illinois Insurance Code, and for failure to state a claim. *Wallis v. Card Servs. Int'l and The Travelers Indem. Gp.*, No. 10 C 7250, ECF No. 90 (May 22, 2012). Judge Darrah's decision dismissing

the fraud and RICO claims has a preclusive effect in this case.  Travelers's failure to pay the insurance claim and alleged conspiracy to loot Midwest Baby were "actually litigated" in that action, and the same allegations form the basis for Wallis's claims in this case.  *See Firischak v. Holder*, 636 F.3d 305, 308 (7th Cir. 2011).  Wallis's claims against Travelers are thus barred by collateral estoppel.[5]

The court now turns to Wallis's general RICO claims.  RICO "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).  To state a claim for a violation of 18 U.S.C. § 1962, a plaintiff must allege that (1) the defendants were employed by or associated with an "enterprise" that was engaged in activities that affect interstate commerce, and (2) the defendants conducted or participated in the conduct of the enterprise through a "pattern of racketeering activity." *Haroco v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384, 387 (7th Cir. 1984).

The "first rule" of pleading a RICO claim is that the "plaintiff must identify the enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990).  An "enterprise is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Id.* at 1440.  The court can glean from the complaint no allegations of meetings or agreements among the defendants that could support a theory that they engaged in a joint enterprise.  Indeed, the court has no idea what the "structure" of an enterprise comprised of a country, two states, three counties, and hundreds of other businesses and law firms might be.  The allegations as to the enterprise are pure boilerplate and are thus insufficient to survive Rule 12(b)(6).  *See Twombly*, 550 U.S. at 555.

---

[5]     Wallis has filed a "Counter-Motion for Sanctions" pursuant to Federal Rule of Civil Procedure 11 against Travelers and the law firm representing it in this action.  (ECF No. 290.)  Having reviewed the Amended Complaint and Travelers's Motion to Dismiss, the court finds that Travelers's arguments are not frivolous and denies Wallis's motion for sanctions.

Nor has Wallis sufficiently alleged a "pattern of racketeering activity," which requires the defendants to have committed at least two predicate acts of racketeering, enumerated in § 1961(1), within a ten-year period. See 18 U.S.C. § 1961(5); *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). To satisfy the "pattern" requirement, a plaintiff must meet the "continuity plus relationship" test: "the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." *Jennings v. Auto Meter Prods., Inc*. ("*Auto Meter*"), 495 F.3d 466, 472-73 (7th Cir. 2007). Here, Wallis has not established the relationship prong. The acts allegedly committed by over 100 different defendants are not related to one another. Nor has he established the requisite continuity to state a RICO claim. The allegations in the complaint describe a "routine commercial dispute," *id.* at 472-73, not the "organized, longterm, habitual criminal activity" that is the hallmark of RICO. *See Gamboa*, 457 F.3d at 705. And as the only victims of the alleged unlawful acts were USA Baby and its officers, there is no threat of future criminal activity.

Moreover, Wallis has not adequately pleaded the predicate acts of racketeering. Wallis alleges generally that the defendants committed predicate acts that violated 18 U.S.C. §§ 1951, 2320, 2319, 1341, 1343, and 1344. Wallis further alleges that the following predicate acts were part of the conspiracy:

(1) The franchisees, law firms, and government officials interfered with interstate commerce by failing to pay royalties, restricting USA Baby "from offering, or fulfilling, its services," and stopping USA Baby's sales. (Am. Compl. ¶¶ 478-86.)

(2) The franchisees trafficked in counterfeit goods or services by illegally using USA Baby's trademarks, knowing that such use was illegal and in violation of the bankruptcy stay. Levine and Cohodes, the franchisee law firms, creditors, and Cardservice International aided the franchises in committing these acts. Cardservice processed credit cards for the franchisees, knowing they were no longer legal franchisees. (*Id*. at ¶¶ 487-503.)

(3) The franchisees and law firms committed copyright infringement, in violation of 17 U.S.C. §§ 501and 506 and 18 U.S.C. § 2319. The franchisees used copyrighted materials without authorization to promote their businesses. These included television ads, websites, logos, designs, and trade dress. (*Id*. at ¶¶ 504-14.)

(4) The franchisees and law firms conspired to commit wire, mail, and bank fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1344. Card Services processed franchisees' transactions, knowing the franchisees use of trademarks was illegal. The transactions were processed by wire, to and from bank accounts, and the account statements were sent by mail. (*Id*. at ¶¶ 515-26.)

These allegations are insufficient to plead predicate violations for a civil RICO claim. They provide no basis upon which a trier of fact could conclude that any of the statutes Wallis cites were violated. Section 1951 applies to interference with commerce by "robbery or extortion" or through threatened or actual physical violence. 18 U.S.C. § 1951(a). There are no allegations in the complaint of robbery "by means of actual or threatened force, or violence, or fear of injury," *see* § 1951(b)(1), of extortion using "wrongful use of actual or threatened force, violence, or fear, or under color of official right, *see* § 1951(b)(2), or of other physical violence committed by any of the defendants.

Section 2320 applies to trafficking in counterfeit goods or services. The complaint alleges that the franchisees violated this section by using USA Baby's trademarks, but it does not allege that defendants trafficked in any goods that were actually counterfeit. *See U.S. v. Petrosian*, 126 F.3d 1232, 1234 (9th Cir. 1997) (explaining that Congress's intent was to curb the trafficking of counterfeit goods).

Wallis's claims of copyright infringement, pursuant to 17 U.S.C. §§ 501 and 506 and 18 U.S.C. § 2319, also fail to establish predicate acts for his RICO claims. As discussed above, Commerce Capital acquired USA Baby's intellectual property rights and subsequently settled its claims against the franchisees. Even assuming that the franchisees committed copyright infringement, these allegations fail to state a predicate act for a RICO claim because there is no

plausible threat of "continuity." *See Auto Meter*, 495 F.3d at 472-73. The violations will not continue into the future, as the claims have been settled, nor was there a pattern of violations occurring over a "substantial period of time" and involving multiple victims. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989) (explaining requirements of "closed-ended" and "open-ended" continuity to establish a "pattern" of criminal activity for a RICO claim).

Sections 1341, 1343, 1344 apply to violations of mail, wire, and bank fraud. As noted above, Rule 9(b)'s particularized pleading requirements govern allegations of fraud in a civil RICO complaint. *See Goren*, 156 F.3d at 726. Thus, for each fraudulent act, a RICO plaintiff "must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding*, 976 F.2d at 1020; *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (noting that the particularity requirement requires "the who, what, when, where, and how"). Moreover, when a plaintiff is alleging that multiple defendants took part in the fraud, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *See Goren*, 156 F.3d at 726 (citing *Vicom, Inc. v. Harbridge Merch. Servs.*, Inc., 20 F.3d 771, 778 (7th Cir. 1994)).

In this case, Wallis has not described the alleged fraud with the requisite particularity; he relies on blanket accusations of "mail and wire fraud" without stating what the fraudulent communications were. The court cannot discern, for example, what the communications contained, which of the defendants was involved in each communication, the date on which each communication took place, or how each communication was transmitted. In short, Wallis does not allege any facts regarding any act of fraud by the defendants that would subject them to liability under RICO. Furthermore, Wallis's allegations of "bank fraud" under § 1344 fail

because none of the actions alleged were intended to defraud a bank. *See Bressner v. Ambroziak*, 379 F.3d 478, 482 (7th Cir. 2004) ("[T]o commit bank fraud, the [defendants] must have developed a scheme or artifice to defraud a bank.").

Finally, as to the government defendants, the complaint does not allege with specificity each defendant's participation in the alleged fraud, but merely lumps all the defendants together. The complaint does not even allege that the government defendants committed fraud. Furthermore, RICO claims against the state defendants are barred by the Eleventh Amendment, and claims against the state judges are barred by judicial immunity. For all of these reasons, Counts XXX and XL are dismissed.

**Counts XXXI**, **XXXII**, **XXXIII**, **XXXIV**, **XXXV**, and **XXXVI** allege that USA Baby and Wallis were denied equal protection of the laws and due process of law, under the Fifth and Fourteenth Amendments, through violations of the bankruptcy stay. To the extent that Wallis seeks to bring these claims against private-party defendants, they are dismissed because a civil rights suit must be based on allegations of federal or state government action. *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010) ("Because § 1983 actions may only be maintained against defendants who act under color of state law, the defendants in § 1983 cases are usually government officials."). Although Wallis asserts generally that the non-government defendants participated in a scheme to violate the plaintiffs' civil rights, these conclusory statements are insufficient to state a claim that any of the non-government defendants was acting under color of state law.

As to the government defendants, Wallis alleges that the state parties and the DOL were aware of the stay, permitted violations of it, and conspired to violate the plaintiffs' civil rights. These allegations fail to state a claim upon which relief can be granted. As explained above,

none of the counties or state officials violated the automatic stay. Meanwhile, the Amended Complaint provides no basis to conclude that the DOL and its officials violated the Fifth Amendment, as the ERISA action brought against USA Baby and its officials was excepted from the automatic stay provisions of the bankruptcy code. *See Solis*, 2012 WL 3779065. Counts XXXI, XXXII, XXXIII, XXXIV, XXXV, and XXXVI are therefore dismissed.

**Count XXXVII** alleges that the state defendants violated the supremacy clause of the Constitution by "placing state law over federal law" in violating a federal injunction issued by the bankruptcy court. As discussed above, Wallis has not alleged facts showing that any of the defendants violated the automatic stay, and Count XXXVII is therefore dismissed.

**Count XXXVIII** alleges that the defendants engaged in a conspiracy to deprive the plaintiffs of civil rights, in violation of 42 U.S.C. § 1985. Section 1985 prohibits a conspiracy to deprive another of equal protection under the law. The conspiracy must be motivated by racial or other class-based discriminatory animus. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Wallis has not alleged his membership in a protected class, nor has he alleged anything that would establish discriminatory animus on the part of any of the defendants. His civil rights conspiracy claim therefore fails. The Seventh Circuit has made clear that "the absence of any underlying violation of [a p]laintiff's rights precludes the possibility of [his] succeeding on a conspiracy claim." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011).

**Count XXXIX** alleges that the government actors, in their official capacities, neglected to prevent a conspiracy against civil rights, in violation of 42 U.S.C. § 1986. As stated above, Wallis has failed to allege a conspiracy to violate his civil rights, and his § 1986 claim fails accordingly. *See Smith*, 550 F.3d at 617-18.

## IV. Conclusion

Because Wallis has failed to state a claim upon which relief can be granted, the Amended Complaint is dismissed pursuant to Rule 12(b)(6).

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:   January 2, 2013